IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LITL LLC,

        Plaintiff,

    v.

LENOVO (UNITED STATES), INC. and
LENOVO (BEIJING) LTD.,

        Defendants.

Civil Action No. 20-689-RGA

MEMORANDUM OPINION

Jack B. Blumenfeld, Rodger D. Smith II, Cameron P. Clark, MORRIS, NICHOLS, ARSHT &
TUNNELL LLP, Wilmington, DE; Martin R. Bader, Michael J. Hopkins, SHEPPARD,
MULLIN, RICHTER & HAMPTON LLP, San Diego, CA; Lai L. Yip, SHEPPARD, MULLIN,
RICHTER & HAMPTON LLP, San Francisco, CA.

    Attorneys for Plaintiff.

Adam W. Poff, Robert M. Vrana, YOUNG CONAWAY STARGATT & TAYLOR, LLP,
Wilmington, DE; Michael A. Albert, Eric J. Rutt, Gerald B. Hrycyszyn, Marie A. McKiernan,
WOLF, GREENFIELD & SACKS, P.C., Boston, MA.

    Attorneys for Defendants.

January 21, 2022

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is Defendants' motion to dismiss for failure to state a claim. (D.I. 34). Defendants Lenovo (United States) Inc. ("Lenovo U.S.") and Lenovo (Beijing) Ltd. ("Lenovo Beijing") argue Plaintiff LiTL's First Amended Complaint ("FAC") (D.I. 31) fails to state a claim on two grounds: (1) the Asserted Patents are directed to ineligible subject matter under 35 U.S.C. § 101, and (2) as to Lenovo Beijing, LiTL fails to state a claim of induced infringement and willful infringement. (*Id.*).

The Section 101 issue was fully briefed for Lenovo U.S.'s first motion to dismiss. (D.I. 10, 11, 16, 19). After Lenovo Beijing filed a separate Motion to Dismiss (D.I. 24) and LiTL filed its FAC, the parties stipulated, and I agreed, that I would consider the previously filed Section 101 motion and accompanying briefing as though it had been refiled in response to the FAC. (D.I. 33). Lenovo Beijing joins in Lenovo U.S.'s Section 101 motion. (D.I. 34 at 1). Lenovo Beijing also brings its own motion to dismiss for failure to state a claim. (*Id.*). Both issues have been fully briefed and I have reviewed the parties' briefing.[1] (D.I. 11, 16, 19, 35, 36, 37, 39 Ex. A, 40, 41).

---

[1]    I agree with LiTL that Lenovo Beijing argued for the first time in its Reply that causation must be pled separately from "intent to cause infringement" to successfully plead induced infringement. Although Lenovo Beijing states in its Opening Brief, "LiTL fails to plead any facts demonstrating that Lenovo Beijing possessed specific intent to induce infringement *or that any inducing acts caused any infringement*," it does not substantively argue that "causation" is its own pleading requirement, distinct from "intent to cause infringement." (D.I. 35 at 2) (emphasis added). In its Opening Brief, Lenovo Beijing discusses causation as a prerequisite for proving (but presumably subsumed within) specific intent, but then pivots to argue for the first time in its Reply that causation is a standalone element of an inducement claim. (D.I. 35 at 8-9; D.I. 37 at 2).

I do not consider Lenovo Beijing's discussion of causation in its Opening Brief sufficient to put LiTL on notice that it intended to argue causation must be pled as an element of induced infringement. For that reason, I will allow and have considered the parties' additional briefing (D.I. 39 Ex. A, 40, 41) on this issue.

## I.  BACKGROUND

LiTL alleges Defendants infringe one or more claims of U.S. Patent Nos. 8,289,688 ("the '688 patent"), 8,624,844 ("the '844 patent"), 10,289,154 ("the '154 patent"), 9,880,715 ("the '715 patent"), 8,612,888 ("the '888 patent), and 8,577,957 ("the '957 patent") (collectively, "the Asserted Patents."). The Asserted Patents relate to portable computing devices. The Asserted Claims of the '688, '844, '154, '715, and '888 patents ("the Display Alteration patents") relate to altering a portable computer's display in response to changes in the physical configuration of the device. The Asserted Claim of the '957 patent ("the Remote Service patent") relates to a "streamlined" computer device capable of operating complex, server-based programs in a simplified manner by transforming "local access operations" into "remote access operations" that can be performed remotely by various "remote services."

### A. Display Alteration Patents

The Asserted Claims of the Display Alteration Patents are generally directed to portable computers configurable among multiple "display modes," where the display changes in response to the physical configuration of the device. (D.I. 31 Ex. A, B, C, D, E). In its FAC, LiTL expressly asserts that Defendants' Accused Products infringe Claim 19 of the '688 patent, Claim 10 of the '844 patent, Claim 11 of the '154 patent, Claim 1 of the '715 patent, and Claim 27 of the '888 patent. (D.I. 31 ¶¶ 117, 162, 209, 246, 287).

The specific Asserted Claims differ slightly in some respects. Some claim a "customized user interface" that displays content (the '715 patent), some claim a "portable computer" with a display component that displays content (the '688, '154, and '844 patents), and one claims a "system" that includes a display component (the '888 patent). Some explicitly claim a keyboard and condition certain display modes on the operability or inoperability of that keyboard. Some

explicitly claim an "orientation sensor" that is used to detect the current physical configuration of the computer so that the display may be adjusted accordingly. Regardless, I find that all the Asserted Claims are "substantially similar" and directed to the same concept, automatically altering a display in response to a change in the physical configuration of the device, which Defendants contend is abstract. *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1341, 1348 (Fed. Cir. 2019) (finding the district court did not err in limiting its Section 101 analysis to a single representative claim where all claims were "substantially similar and linked to the same abstract idea"). Therefore, I will consider Claim 19 of the '688 patent as representative of the Display Alteration Patents' Asserted Claims in my analysis. Claim 19 recites:

A portable computer comprising:

a base unit comprising an integrated keyboard;

a single display unit including a single display screen configured to display content;

an orientation sensor which detects a physical orientation of the single display unit relative to the base unit;

and a display orientation module which orients the content displayed on the single display screen responsive to the physical orientation detected by the orientation sensor between at least a first content display orientation, the second content display orientation being 180 degrees relative to the first content display orientation;

wherein the display orientation module is further configured to detect a change between a laptop mode, an easel mode, and a frame mode based on the detected physical orientation of the single display unit relative to the base unit, and wherein the display orientation module is further configured to:

trigger a display inversion from one of the first and second content display orientations to the other of the first and second content display orientations responsive to the orientation sensor detecting the change between the laptop mode and the easel mode, trigger a display inversion from one of the first and second content display orientations to the other of the first and second content display

4

orientations responsive to the orientation sensor detecting the change between the easel mode and the frame mode.

**B. Remote Service Patent**

The '957 Patent is titled, "System and Method for Streamlining User Interaction with Electronic Content." (D.I. 31 Ex. F). LiTL alleges Defendants infringe "one or more of the claims of the '957 patent, including at least claim 19." (D.I. 31 ¶ 318). Claim 19 recites an invention that allows users to operate server-based programs from a streamlined computer device by leveraging some number of remote services (*e.g.*, online remote storage services) to perform "*local* access operations" (*e.g.*, memory storage) requested by the server-based program, *remotely*. (D.I. 31 Ex. F).

Specifically, Claim 19 recites a "streamlined computer device" (*i.e.*, a processor "operatively connected to" memory), through which a user can interact with a server-based (non-local) program using the device's simplified graphical user interface ("GUI"). The streamlined device is capable of receiving "executable operations" from the server-based program and presenting those to the user via the device's GUI. Once the user has selected an "executable operation" to be performed, the streamlined device determines whether the "executable operation" constitutes a "local access operation." An example of a "local access operation" could be storing electronic content to local memory. Upon determination that an "executable operation" is a "local access operation," the streamlined device transforms the "local access operation" into a "remote access operation" by (1) identifying some characteristic of the executable operation (*e.g.*, determining that the file type to be saved is a PDF), (2) searching for an available "remote service" that can perform the operation, based on said characteristic of the operation (*e.g.*, searching for a remote service, such as Google Drive, that can store PDF files), and (3) retrieving the user's access

information for the corresponding remote service. Finally, the server-based program is informed of the execution of the remote access operation just as it would be if the operation had been executed locally.

The invention recited in Claim 19 simplifies the user's experience so that all the user must do is select "executable operations" via the device's simplified GUI, without having to worry about how the operation will be executed (*i.e.*, whether the operation will take place locally or remotely, and, if remotely, which service will be used to carry out the operation). LiTL claims that this method of relying on a potential plurality of remote services to perform operations that would otherwise be performed locally reduces and/or eliminates the need for "non-volatile memory" in the streamlined computer device, which, in turn, reduces the complexity and cost of the device. (D.I. 31 Ex. F at 18:64-67).

Claims 1 and 19 are the only independent claims recited by '957 patent. Claim 1 recites the same concept as claim 19, but in method form. The dependent claims merely offer potential examples for concretizing the generic terms and steps that are broadly described by Claims 1 and 19. For these reasons, and because Claim 19 is the only claim of the '957 patent expressly asserted by LiTL in its FAC, I will consider Claim 19 representative of the '957 patent. Claim 19 recites:

A streamlined computer device, the device comprising:

at least one processor operatively connected to a memory, the processor when executing is configured to cause the device to:

receive electronic content hosted by a server system;

render electronic content to a user in a graphical user interface;

receive selection through the graphical user interface, by the user, of at least one executable operation provided by the server system within the electronic content;

determine that the at least one executable operation performs a local access operation, and

transform the at least one executable operation into a remote access operation, wherein transforming includes:

> identifying at least one characteristic of the at least one executable operation;
>
> accessing a profile to retrieve information on at least one available remote services (sic) responsive to the at least one identified characteristics (sic) of the executable operation;
>
> selecting an available remote service from the at least one available remote service;
>
> retrieving the service access information for the selected remote service;
>
> wherein transforming is executed based on the at least one characteristic of the at least one executable operation and the service access information; and

transmit the remote access operation to the server system

## II.    LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Id.* at 555.  The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements.  *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").  Moreover, there must be sufficient factual matter to state a facially plausible claim to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The facial plausibility standard is satisfied

when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (cleaned up)).

## III.   DISCUSSION

### A. Patent Eligible Subject Matter

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). This is, however, appropriate "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

Section 101 of the Patent Act defines patent-eligible subject matter. It provides, "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 215 (2014). The purpose of these carve-outs is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well

be deserving of patent protection." *Id.* at 1293–94 (internal quotation marks and emphasis omitted). In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 72 (emphasis omitted).

The Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. First, the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 221. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (quoting *Bilski*, 561 U.S. at 610-11). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.*

"Patent eligibility under § 101 is a question of law that may contain underlying issues of fact." *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1165 (Fed. Cir. 2019). Whether a claim is drawn to patent-eligible subject matter "is a matter of both claim construction and statutory construction." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010). Claim construction is a question of law. *See Teva Pharm. USA, Inc. v.*

9

*Sandoz, Inc.*, 574 U.S. 318, 325 (2015) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388-91 (1996)).

### 1. Display Alteration Patents

The Display Alteration Patents recite a portable computer device that can be configured in multiple "display modes" and alters the orientation of its display according to its physical configuration. Defendants argue the claimed invention is merely "altering a display in response to information" and is therefore abstract. (D.I. 11 at 8). I disagree. The Display Alteration Patents disclose a non-abstract technical improvement for enabling the use of a portable computing device in multiple physical configurations.

In analyzing Section 101 questions involving computer-related inventions, the Federal Circuit makes the critical distinction "between, on one hand, computer-functionality improvements and, on the other, uses of existing computers as tools in aid of processes focused on 'abstract ideas.'" *Elec. Power Grp., Inc. v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). Defendants cite several Federal Circuit decisions finding claims directed to "altering a display in response to information" to be abstract. (D.I. 11 at 8). These examples address patents claiming various ways of selecting and organizing content to be displayed on a static display screen. *E.g.*, *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1344-45 (Fed. Cir. 2018) (finding abstract the "collection, organization, and display of two sets of information on a generic display device"); *Ameranth, Inc. v. Domino's Pizza, LLC*, 792 F. App'x 780, 787 (Fed. Cir. 2019) (same for "automatic formatting for different handheld devices"); *Elec. Power*, 830 F.3d at 1354 (same for "gathering and analyzing information of a specific content, then displaying the results"). The "focus" of these claims is the selection and presentation of information, an abstract idea.

By contrast, here, the "focus" of the Display Alteration Patents is allowing a portable computer device to be operated in multiple physical configurations or "display modes." The automatic alteration of the display is intended to ensure continuity of operability regardless of the physical configuration of the device. The focus of the claims is not what is on the display screen, but rather ensuring that the display screen remains functional for the user in each physical configuration of the device. This is a specific, technical improvement in the field of portable computing devices. It is not an abstract idea.

Defendants also argue, "[T]he idea of altering a display based on a detected configuration about the device was well-known in the art," and a concept being "well understood in the art" supports a finding of abstractness. (D.I. 11 at 9, (citing *Chamberlain Group, Inc. v. Techtronic Industries Co.*, 935 F.3d 1341, 1347 (Fed. Cir. 2019))). They point to an IBM patent from 1996 that discloses an "apparatus for altering a display . . . in response to a change in orientation." (D.I. 11 at 9). Exactly how much the Display Alteration Patents differ from what was disclosed in the prior art is a matter to be resolved at a later time.  Defendants imply the invention is obvious, but that is not an issue at this stage.  For now, I find that LiTL has pled sufficient facts for me to conclude that the Display Alteration Patents are directed to "a specific means or method that improves the relevant technology." *Chamberlain.*, 935 F.3d at 1347. While the general concept of altering a display in response to the orientation of a laptop computer in its standard laptop configuration may have been known, the Display Alteration Patents are directed to altering the display of a device transitioning among multiple physical configurations (*i.e.*, "laptop mode," "frame mode," and "easel mode"). I agree with LiTL that this is a specific technological improvement in the portable computing field.

Because I do not find the Display Alteration Patents are directed toward an abstract idea, Defendants' Section 101 motion to dismiss the Display Alteration Patents is DENIED.

**2. Remote Service Patent**

Defendants argue that the '957 patent is directed to "accessing remotely stored information," which the Federal Circuit has held is an abstract idea. (D.I. 11 at 4, (citing *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1330 (Fed. Cir. 2017) ("We conclude therefore that the [asserted patent's] concept of remotely accessing user-specific information is abstract, and thus fails under step one."))). I disagree that Claim 19 of the '957 patent is merely directed to accessing remotely stored information.

Defendants are correct that to assess whether a claim is directed to an abstract idea, "it is necessary to analyze the 'focus' of the claim, *i.e.*, its 'character as a whole.'" (D.I. 11 at 4, citing *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018)). Here, the "focus" of Claim 19 is not "accessing remotely stored information," but rather delegating "local access operations" to remote services to be performed remotely. Put simply, the Claim is directed to outsourcing tasks, rather than accessing information. Because the Claim is directed to a specific method of finding, accessing, and delegating tasks to remote services, I find it is not directed to an abstract idea.

I agree with LiTL that Claim 19 recites "a non-abstract computer-functionality improvement … done by a specific technique that departs from earlier approaches." (D.I. 16 at 18 (citing *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018))). Claim 19 improves computer functionality in two specific ways. First, it allows users to operate complex, server-based programs from a simplified GUI, thereby reducing user confusion by not requiring users to be familiar with complex features they neither need nor understand. (D.I. 31 Ex. F at 12:18-45). Second, by enlisting remote services to perform operations that would otherwise be

performed locally, the invention eliminates or reduces the need for local non-volatile memory, allowing for cheaper, less complex, more "streamlined" computer devices. (D.I. 31 Ex. F at 18:64-67).

Finally, Claim 19 does more than simply claim all methods of "transforming a local access operation into a remote access operation." The Claim specifically recites a technique for such transformation, including (1) characterizing the type of local access operation, (2) cross-referencing that specific type of local access operation against a potential plurality of remote services to find one that is available and capable of performing the operation, and (3) accessing the remote service by retrieving the user's or the device's specific access information for that remote service. Because Claim 19 describes a specific technological improvement in the field of portable computing and recites a specific technique for implementation, I find that it is not directed to an abstract idea.  Therefore, Defendants' Section 101 motion to dismiss the Remote Service Patent is DENIED.

### B. Induced Infringement

To succeed on a claim of induced infringement, "the patentee must show, first, that there has been direct infringement, and second, that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement. While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice." *MEMC Electr. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005) (cleaned up). "[L]iability for inducing infringement attaches only if the defendant knew of the patent and that 'the induced acts constitute patent infringement.'" *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632, 639 (2015). "[A] plaintiff must prove that the defendants' actions induced infringing acts and that they knew or should have known their actions would

13

induce actual infringement." *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003) (cleaned up).

In summary, to prove induced infringement, a plaintiff must prove the following elements: (1) direct infringement, (2) knowing inducement of infringement, and (3) specific intent to encourage another's infringement. To prove the second element, "knowing inducement of infringement," it logically follows that a plaintiff must prove the following sub-elements: (a) knowledge of the patent(s), *Commil*, 575 U.S. at 639; (b) knowledge of the direct infringement of the patent(s), *id.*; *(*c) action(s) taken to induce infringement, *Warner-Lambert*, 316 F.3d at 1363; (d) knowledge the action(s) would induce the direct infringement, *Id.*; and (e) some causal link between the inducing acts and the direct infringement. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004) ("[t]o prevail under a theory of indirect infringement, [plaintiff] must first prove that the defendants' actions led to direct infringement"). This means that at the pleading stage, a plaintiff must allege facts that would allow a factfinder plausibly to conclude each of these elements and sub-elements is satisfied. LiTL has done that here.

LiTL alleges, "Lenovo Beijing knowingly intended to induce several direct infringers – specifically Lenovo U.S., end users, repair and service technicians, Lenovo U.S. employees and contractors – to infringe the Asserted Patents." (D.I. 36 at 2; D.I. 31 ¶¶ 144, 193, 231, 270, 308, 339). Lenovo Beijing does not dispute that LiTL has successfully pled the requisite direct infringement element. It does, however, argue that LiTL has failed to successfully plead (1) pre-suit knowledge of the Asserted Patents, (2) specific intent to cause infringement, and, belatedly, (3) a causal link between the inducing acts and the direct infringement. (D.I. 35 at 5; D.I. 37 at 2).

As I recently stated, when induced infringement is alleged, an amended complaint can operate to plead knowledge since the filing of the original complaint. *Wrinkl, Inc. v. Facebook,*

*Inc.*, 2021 WL 4477022, at *7 (D. Del. Sept. 30, 2021). Here, LiTL's FAC alleges post-suit knowledge as to all six of the Asserted Patents, *i.e.*, knowledge since the original complaint was filed on May 22, 2020. (D.I. 31 ¶¶ 140, 189, 227, 266, 304, 335).

For its claim of pre-suit induced infringement, LiTL must allege sufficient facts to support an inference that Lenovo Beijing had knowledge of each of the Asserted Patents prior to the commencement of this suit. For the reasons that follow, I find that LiTL has succeeded in doing so only for the '688 patent. Therefore, I will GRANT Lenovo Beijing's Motion to Dismiss for failure to state a claim of pre-suit induced infringement for the '844, '715, '957, '154, and '888 patents.

### 1.  Pre-Suit Knowledge

#### a.  '688 Patent

LiTL has alleged sufficient facts to support a plausible inference that Lenovo Beijing had pre-suit knowledge of the '688 patent.

The '688 patent is cited on the face of one of Lenovo Beijing's patents and Lenovo Beijing identified the '688 patent specifically in two Information Disclosure Statements it submitted to the USPTO in connection with two of its patent applications. (D.I. 31 ¶¶ 33, 131-32).

USPTO examiners cited the published version of the patent application that issued as the '688 patent ("the '832 publication") in its rejection of two pending Lenovo Beijing patent applications. Lenovo Beijing itself discussed the substance of the '832 publication during prosecution of another of its patent applications. (D.I. 31 ¶¶ 128-29). I agree with Lenovo Beijing that, without additional context, a reference to a patent application, even a published one, is often irrelevant to knowledge of a patent, as a "substantial percentage of applications never result in patents," and "[w]hat the scope of claims in patents that do issue will be is something totally

15

unforeseeable." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985). Here, however, LiTL has also alleged facts showing Lenovo Beijing was familiar with the actual substance described in the '832 publication and has pointed to specific instances in which Lenovo Beijing cited the patent the '832 publication issued as. This additional context makes it more plausible that Lenovo Beijing was aware a patent did eventually issue for the invention described in the '832 publication, which makes Lenovo Beijing's awareness of the '832 publication more relevant to knowledge.

Lenovo Group Ltd, the parent company of Lenovo Beijing, has cited to the '688 patent six times and to the '832 publication three times, and LiTL points to over one hundred citations to the '688 patent by other "major players" in the personal computing industry to show the '688 patent is "well known" in the industry. (D.I. 31 ¶87). The allegations adequately support the conclusion. *See Investpic, LLC v. FactSet Research Sys., Inc.*, 2011 WL 4591078, at *2 (D. Del. Sept. 30, 2011) (finding an asserted patent was "well-known in the industry having been cited by at least 79 issued U.S. patents" in the last decade). While none of these allegations on its own may be sufficient to demonstrate knowledge, taken together, I find that they plausibly support an inference that Lenovo Beijing had pre-suit knowledge of the '688 patent.

### b. '844 Patent, '715 Patent, '957 Patent, '154 Patent, '888 Patent

LiTL does not allege a single instance of Lenovo Beijing specifically referencing any of the remaining five Asserted Patents. Instead, it relies on a small handful of citations to various applications that eventually issued as the Asserted Patents or, even more distantly, applications that eventually issued as patents related to the Asserted Patents, sometimes once or twice removed. (*E.g.*, D.I. 31 ¶¶ 171, 173-74, 259, 329). For the '154 and '888 patents, LiTL does not identify any

instances of Lenovo Beijing citing either the patents or their corresponding applications. (D.I. 31 ¶¶ 218-236; 256-277).

Because LiTL cannot point to any facts suggesting Lenovo Beijing had specific knowledge of the remaining Asserted Patents, it relies on general allegations of (1) Lenovo Beijing's "sophistication and extensive experience with IP matters and substantial prosecution activities directed to electronic devices with 2-in-1 functionality," (2) the Asserted Patents' relationship to the '688 patent, and (3) the Asserted Patents' membership in "a patent family that has been frequently cited in patent applications of major players in the personal computing space," to support its allegation of pre-suit knowledge. (S*ee, e.g.*, D.I. 31 ¶ 219, 330). I do not consider these allegations specific enough to plausibly support a conclusion that Lenovo Beijing had pre-suit knowledge of the '844, '715, '957, '154, and '888 patents.

## 2. Specific Intent and Causation

In this case, because Lenovo U.S. continues to offer the Accused Products for sale in the United States, the specific intent and causation analysis for induced infringement is essentially the same for the pre-suit claims of the '688 patent and post-suit claims of all the Asserted Patents.

LiTL alleges the Accused Products directly infringe as soon as they are sold in the United States by Lenovo U.S.. Lenovo Beijing does not dispute this theory of direct infringement, and even attempts to use it to argue that, because no further action is required to "cause" infringement, Lenovo Beijing cannot have induced infringement. I find that argument unconvincing.

If the Accused Products directly infringe upon being sold in the U.S., it follows that any actions by Lenovo Beijing intended to make the products available for sale in the U.S. would, by definition, be relevant to the argument that Lenovo Beijing intended to cause infringement. Here,

LiTL has alleged several actions undertaken by Lenovo Beijing that evince a specific intent to cause the Accused Products to be sold in the United States.

Lenovo Beijing specifically developed and designed one or more of the Accused Products to comply with U.S. FCC requirements and to meet U.S. EPA Energy Star requirements. (D.I. 31 ¶ 22). A Lenovo Beijing employee submitted an "equipment authorization application" for one of the Accused Products to the FCC and explicitly noted that public disclosure of documents containing proprietary information about the Accused Products would give competitors an unfair advantage in "the market," presumably referring to the U.S. market. (D.I. 31 ¶ 25).

The Federal Circuit has held that evidence of design decisions undertaken for the purpose of enabling infringing use is evidence of specific intent to induce infringement. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1323 (Fed. Cir. 2009); *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1343 (Fed. Cir. 2008). The Federal Circuit has specifically pointed to evidence of foreign companies designing products "to meet certain United States Energy standards, including Energy Star" as evidence that supports a finding that a defendant "actually induced third-party direct infringement." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1333-34 (Fed. Cir. 2016). The same evidence that supports a finding of inducement may also support a finding of an intent to induce infringement. I agree with LiTL that here, because the "infringing use" is the Accused Products being sold in the United States, evidence of design decisions undertaken for the purpose of enabling that infringing use (*i.e.*, enabling the sale of the products in the U.S. by designing them to comply with U.S. regulatory requirements), is evidence that plausibly supports a finding of both affirmative acts and specific intent to induce infringement.

Lenovo Beijing is the registrant of the Lenovo.com domain and, as registrant, LiTL claims, "is solely responsible for what website the Lenovo.com Domain points to in various locations

around the world."[2] (D.I. 31 ¶¶10, 16). Lenovo Beijing uses the Lenovo.com Domain to disseminate product manuals,[3] press releases, and other advertising material about the Accused Products to potential Lenovo customers in the United States. (D.I. 31 ¶144, 145). Specific actions such as this, taken by Lenovo Beijing to encourage customers to purchase infringing products in the United States, also support an inference of intent to induce infringement.

In my view, Plaintiff's factual assertions, taken together and viewed in the light most favorable to LiTL, plausibly support an inference that Lenovo Beijing intends to cause the Accused Products to be sold in the United States.[4]

Lenovo Beijing argues LiTL pleads these factual allegations to show specific intent but pleads nothing to show causation between Lenovo Beijing's inducing actions and the direct infringement.[5] (D.I. 37 at 1 ("But even if these activities are the inducing acts, they are insufficient

---

[2]      While Lenovo Beijing disputes the veracity of that claim (D.I. 35 at 7-8), at the motion to dismiss stage I must treat the complaint's factual allegations as true.

[3]      Lenovo Beijing's argument that other third-party websites also post user guides for the Accused Products, even if properly considered on a motion to dismiss, would not be compelling. (D.I. 35 at 7). Lenovo Beijing has a commercial interest in customers purchasing the Accused Products and it is reasonable to infer the information it posts relating to those products is meant to encourage and facilitate those purchases.  What third-party websites do is irrelevant to Lenovo Beijing's intent.

[4]      Lenovo Beijing owns United States trademark registrations that it "uses in connection with sales and offers for sale of the Accused Products within the United States." (D.I. 31 ¶¶ 36-56). Lenovo Beijing acted affirmatively to obtain these trademark registrations and use them in connection with the Accused Products. Given the other allegations, I do not have to decide whether these actions are additional evidence of an intent to secure the Accused Products' competitiveness in the United States market and ultimately to facilitate the sale of the Accused Products in the U.S.

[5]      Technically, Lenovo Beijing argues this in the alternative. I am unconvinced by Lenovo Beijing's primary argument, that because LiTL's allegations directed to intent are in the "Jurisdiction and Venue" section of the FAC and only incorporated by reference in its counts of induced infringement, Lenovo Beijing was not "on notice that such activities were directed to inducement." (D.I. 37 at 1). In addition to incorporating the "Jurisdiction and Venue" paragraphs by reference, LiTl re-alleges enough other similar factual allegations in its induced infringement

because they are not alleged to cause infringement.")). I disagree. The same factual allegations that support a plausible inference of intent also support a plausible inference of causation. The causal nexus between the inducing actions and direct infringement can be shown through circumstantial evidence. "Indeed, we have affirmed induced infringement verdicts based on circumstantial evidence of inducement (*e.g.*, advertisements, user manuals) directed to a class of direct infringers (*e.g.*, customers, end users) without requiring hard proof that any individual third-party direct infringer was actually persuaded to infringe by that material." *Power Integrations*, 843 F.3d at 1335.

Here, because the Accused Products directly infringe when sold and the inducing acts LiTL alleges are directed toward encouraging U.S. customers to purchase the Accused Products, LiTL need not allege "hard proof" that any individual purchaser "was actually persuaded" to purchase the Accused Products by Lenovo Beijing's inducing acts. The factual allegations LiTL has made provide sufficient circumstantial evidence to draw such an inference at the pleadings stage.

Finally, Lenovo Beijing's damages argument, "it is unclear what kind of relief LiTL can even obtain against Lenovo Beijing," (D.I. 35 at 9) is both premature and irrelevant to the issue of whether LiTL has successfully stated a claim of induced infringement.

LiTL has plausibly alleged pre-suit knowledge, causation, and specific intent to induce infringement of the '688 patent. Thus, Lenovo Beijing's Motion to Dismiss for failure to state a claim of pre-suit induced infringement is DENIED as to the '688 patent. LiTL has successfully alleged post-suit knowledge, causation, and specific intent to induce infringement as to all six of

---

counts to put Lenovo Beijing on notice of its theory of induced infringement. (*See, e.g.*, D.I. 31 ¶¶ 141, 143, 147).

the Asserted Patents. Therefore, Lenovo Beijing's Motion to Dismiss for failure to state a claim of post-suit induced infringement is DENIED as to all patents.

### C. Willful Infringement

"[A] finding of induced infringement does not compel a finding of willfulness. Indeed, the standard required for willful infringement is different than that for induced infringement." *SRI Int'l, Inc. v. Cisco Systems, Inc.*, 14 F.4th 1323, 1329 (Fed Cir. 2021). "Under *Halo*, the concept of 'willfulness' requires … no more than deliberate or intentional infringement. The question of enhanced damages is addressed by the court once an affirmative finding of willfulness has been made." *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016)) (cleaned up).

As I stated recently in *Wrinkl*, an amended complaint cannot rely upon the original complaint as a basis to allege knowledge for a willful infringement claim. *Wrinkl, Inc. v. Facebook, Inc.*, 2021 WL 4477022, at *7 (D. Del. Sept. 30, 2021).

LiTL has plausibly alleged that Lenovo Beijing had pre-suit knowledge of the existence of the '688 patent. At the motion to dismiss stage, that is sufficient to support a claim of willful infringement. Thus, as to the '688 patent, Lenovo Beijing's motion to dismiss for failure to state a claim of willful infringement is DENIED. Because LiTL has failed to plausibly allege pre-suit knowledge as to the remaining Asserted Patents, I will GRANT Lenovo Beijing's motion to dismiss for failure to state a claim of willful infringement as to the other five patents.

### IV.    CONCLUSION

For the reasons stated above, Defendants' Section 101 motion to dismiss is DENIED with respect to all six Asserted Patents.

Lenovo Beijing's motion to dismiss for failure to state a claim of post-suit induced infringement is DENIED with respect to all six Asserted Patents. Lenovo Beijing's motion to dismiss for failure to state a claim of pre-suit induced infringement is GRANTED with respect to the '844, '154, '715, '957, and '888 patents and DENIED with respect to the '688 patent. Lenovo Beijing's motion to dismiss for failure to state a claim of willful infringement is GRANTED with respect to the '844, '154, '715, '957, and '888 patents and DENIED with respect to the '688 patent.

An appropriate order will issue.